Nathan D. Miller (10836)
Jensen, Duffin & Dibb, LLP
311 South State St., Suite 380
Salt Lake City, UT 84111
Ph. 801-531-6600
Fax 801-521-3731
nathan@millerlawonline.com

*Attorney for Plaintiff*

---

IN THE UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF UTAH

---

| | |
|---|---|
| OPES CAPITAL GROUP, LLC, a Nevada limited liability company,<br>            Plaintiff,<br>     v.<br><br>CELERITY WORLD CAPITAL, LLC, a Utah limited liability company; CELERITY INVESTMENTS, LLC, a Utah limited liability company; TOWNSEND VENTURE COMPANY, LLC, a Utah limited liability company; HOUSE4CASH.INFO, Inc., a Utah corporation; VALLEY FORGE UNLIMITED, INC.,  a Utah corporation; GARY ROBERT WILSON, an individual; WAYNE ASTON, an individual; NICK SMITH, an individual; OPTIMUM INVESTMENTS, INC., a Utah corporation; KRISTEN A. RICKS, an individual; MICHAEL J. RICKS, an individual; JENNIFER THOENNES, an individual; MARK SCHELHAUS, an individual; KALIAN OSBORN, an individual; CAROL POOLE, an individual; METRO NATIONAL TITLE OF NORTHERN UTAH, INC., a Utah corporation; and John Does 1-10.<br><br>                    Defendants. | **COMPLAINT**<br><br><br><br>Civil No. _____<br><br><br>Judge _____ |

Comes now the Plaintiff, Opes Captial Group, LLC, and complains of the Defendants as follows:

PARTIES

1. Plaintiff is a Nevada limited liability company.

2. Defendant Celerity World Capital, LLC ("Celerity") is a Utah limited liability company at all times relevant to this Complaint doing business in the State of Utah.

3. Defendant Celerity Investments, LLC is a Utah limited liability company at all times relevant to this Complaint doing business in the State of Utah.

4. Defendant Townsend Venture Company, LLC is a Utah limited liability company at all times relevant to this Complaint doing business in the State of Utah.

5. Defendant House4Cash.Info, Inc. is a Utah corporation at all times relevant to this Complaint doing business in the State of Utah.

6. Defendant Valley Forge Unlimited, Inc. is a Utah corporation at all times relevant to this Complaint doing business in the State of Utah.

7. Defendant Gary Robert Wilson is an individual and at all times relevant to this Complaint a resident of the State of Utah.

8. Defendant Wayne Aston is an individual and at all times relevant to this Complaint a resident of the State of Utah.

9. Defendant Nick Smith is an individual and at all times relevant to this Complaint a resident of the State of Utah.

10. Defendant Optimum Investments, Inc. is a Utah corporation at all times relevant to this Complaint doing business in the State of Utah.

11. Defendant Kristen A. Ricks is an individual and at all times relevant to this Complaint a resident of the State of Utah.

12. Defendant Michael J. Ricks is an individual and at all times relevant to this Complaint a resident of the State of Utah.

13. Defendant Jennifer Thoennes is an individual and at all times relevant to this Complaint a resident of the State of Massachusetts.

14. Defendant Mark Schelhaus is an individual and at all times relevant to this Complaint a resident of the State of California.

15. Defendant Kalian Osborn is an individual and at all times relevant to this Complaint a resident of the State of California.

16. Defendant Carol Poole is an individual and at all times relevant to this Complaint a resident of the State of Utah.

17. Defendant Metro National Title of Northern Utah, Inc. ("Metro") is a Utah corporation at all times relevant to this Complaint doing business in the State of Utah.

18. Defendants John Does 1-10 are entities or individuals who are unknown to the Plaintiff at this time but that may become known through discovery.

<u>JURISDICTION AND VENUE</u>

19. This Court has jurisdiction over the subject matter of this case pursuant to 15 U.S.C.A. Section 77v(2) and 78aa, because Plaintiff allege one or more violations of Section 10(b) of the 1934 Securities Exchange Act (the "Exchange Act"), 15 U.S.C.A. Section 78j(b); and/or Securities Exchange Commission Rule 10b-5, 17 C.F.R. Section 240.10b-5, promulgated thereunder; as well as violations of Section 12(a)(1) and (2) of the 1933 Securities Act (the

"Securities Act"), 15 U.S.C.A. Section 77l (a)(1) and (2), and the violations of such acts involved one or more means or modalities of interstate commerce.

20. The Court has personal jurisdiction over Defendant because, as to each allegation herein, the Defendant is a resident or routinely conducts business in Utah, and/or committed the acts and/or omissions complaint of in Utah.

21. Violations of the Utah Uniform Securities Act (the "Utah Act"), Section 61-1-1 *et seq.*, and other state law and common law claims are included in this Complaint based upon principles of pendent jurisdiction.

22. Alternatively, this Court has jurisdiction based upon the diversity of the parties.

23. The Plaintiff is a Nevada limited liability company and has been at all times relevant to this Complaint.

24. All of the Defendants are or were at all times relevant to this Complaint residents of Utah, California or Massachusetts and all of the Defendants were doing business in the State of Utah personally or through means of interstate commerce at all times relevant to this Complaint.

25. The amount in controversy exceeds $75,000, exclusive of costs and interest.

26. Based upon the foregoing, there is complete diversity of citizenship between the parties, the required jurisdictional amount is alleged and Diversity Jurisdiction is appropriate pursuant to 28 U.S.C. §1331, together with principals of ancillary and pendent jurisdiction as to the stated common law or state law claims.

27. Venue in this District is proper pursuant to Section 22(a) of the Securities Act (15 U.S.C. Section 7 (v)(a)), and Section 27 of the Exchange Act (15 U.S.C. Section 78aa) because multiple defendants transacted their affairs, have agents, are found, and reside within the District of Utah,

and acts of transactions constituting federal securities law violations occurred within the District of Utah.

## STATEMENT OF FACTS

28. In March 2008 Plaintiff was introduced at a meeting to Celerity WC by Michael Breinholt.Present at the meeting in March 2008 were the Plaintiff's principals, Wayne Aston (from Celerity WC) ("Aston"), and Nick Smith (also from Celerity WC) ("Smith").

29. Plaintiff's principals were  told by Aston and Smith that they had a trading platform that could make hundreds of thousands, even up to millions of dollars per week.

30. In efforts to demonstrate their success, Aston and Smith stated that they owned a title company, mortgage company, racecar team, and that they hosted a celebrity poker tournament.

31. They also stated that they owned expensive cars, such as Bentleys, Rolls Royces, and Ashton Martins.

32. Aston and Smith stated that they were worth millions of dollars because of the trading platform they were offering to the Plaintiff and that they had been doing this for years.

33. The Plaintiff's principals are members of the Church of Jesus Christ of Latter-Day Saints and Aston and Smith stated that they were also members; this statement gave the Plaintiff's principals comfort because they assumed that Aston and Smith would be honest and trustworthy as a result of their religious beliefs.

34. Aston and Smith explained that they used a trading platform to trade mid-term notes ("MTNs").

35. They explained that the money would be deposited into an account and that it couldn't be withdrawn by anyone but the that the account would be "pinged" showing that the funds in order to trade the MTNs.

36. After inquiry from the Plaintiff's principals, Aston and Smith stated that had made all or a substantial amount of their fortune trading MTNs.

37. Aston and Smith said that Celerity WC was looking for a new trading partner because they couldn't do any more trades in their names.

38. They offered the Plaintiff a deal if Plaintiff would let them use its name.

39. Aston and Smith explained that they would use Celerity WC's money and Plaintiff's name and then split the proceeds.

40. Aston and Smith said the returns would be between 25% – 100%, per week.

41. Aston and Smith did not disclose any risk factors and Plaintiff's principals felt, based on their representations that this would be a safe way to make money since the money would never leave the account.

42. Within a short time after the meeting Aston and Smith called the Plaintiff stating that collectively they were going to have to put up $1,500,000 to do the trade.

43. They agreed that each party would put up one-half of the amount.

44. They stated that the money would go into escrow with Metro.

45. They stated that Metro was safe and they would make sure the money was secure.

46. In April 2008, before any money was sent to Metro, Aston and Smith called the Plaintiff's principals.

47. On the conference call with Aston and Smith was Jennifer Thoennes ("Thoennes") and Mark Schelhaus ("Schelhaus") who said they were from Optimum Investments.

48. Thoennes and Schelhaus were introduced by Aston and Smith as the "providers" meaning that their company (Optimum Investments) would be providing the $25,000,000 to do the trade and helping to open the account to do the trade.

49. They stated that the $1,500,000 was a fee to Optimum Investments for its services in opening the trading account.

50. Thoennes and Schelhaus said they would take care of everything and get the account opened up.

51. They also stated that they had made a lot of money trading MTNs.

52. Thoennes and Schelhaus referred Plaintiff to Kalian Osborn ("Osborn") as a referral so that they could speak to someone who had made money with them through the trading of MTNs.

53. They later called back stating that an HSBC account in Hong Kong had been opened up under Adam Bentley's (one of Plaintiff's principals) name.

54.   Plaintiff then spoke with Osborn to ask about Optimum Investments.

55. Osborn represented to Plaintiff that he had made a lot of money with Optimum Investments by using them and their "proof of funds."

56. Osborn encouraged the Plaintiff to use Optimum Investments to trade MTNs.

57. Plaintiff was instructed by Celerity WC to be in touch with Carol Poole at Metro to set up the escrow account.

58. Carol Poole emailed an escrow contract to Plaintiff and told Plaintiff the wire instructions for the account.

59. On or about the first week of April, Plaintiff wired $1,500,000 to Metro under the escrow instructions provided by Carol Poole, Metro's escrow officer.

60. Plaintiff later discovered that on or about April 8, 2008, the money left the escrow account and was wired to people not listed or mentioned on the escrow agreement.

61. On or about April 15, 2008, Optimum Investments send Plaintiff a proof of funds of $25,000,000 in an alleged Hong Kong account.

62. Optimum Investments then said they would send a swift MT760 to the Plaintiff's trader so that the trade could take place.

63. In the meantime, the Plaintiff provided the proof of funds to its trader, however, the trader came back and stated that the account was a fake.

64. When this was brought to Optimum Investments' attention they stated that the trader was wrong and they should get another trader.

65. The alleged proof of funds was only good for 30 days so Optimum Investments said that they would extend the account until June 15, 2008 if the Plaintiff paid them an additional $50,000.00.

66. Based on this representation Plaintiff sent Optimum Investments another $50,000.00. to extend the account until June 15, 2008.

67. Plaintiff then tried to get Optimum Investments to send a swift MT760 on the alleged account so that a new trader could trade it.

68. Optimum Investments refused to send the swift MT760.

69. After the alleged account expired on June 15, 2008, Plaintiff began to suspect that the Defendants had defrauded them.

70. They began approaching the Defendants and each of the Defendants pointed to the other Defendants.


## CAUSES OF ACTION

### COUNT 1
(Violation of Section 10(b) of the Securities Act and of Rule 10b-5)


71. Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

72. This Count is brought under Section 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. Section 78aa, to enforce rights arising under Section 10(b) of the Exchange Act, 15 U.S.C. Section 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. Section 240.10b-5.

73. The promissory notes offered and sold by the Defendant are securities under Section 2(b)(1) of the Securities Act and under Section 3(a)(10) of the Exchange Act.

74. In connection with the offer and sale of securities to investors, Defendants, directly or indirectly, made false statements, and/or engaged in a scheme or artifice to defraud including, but not limited to, those set forth above in this Complaint, and the following:

  a. Invested funds would be used exclusively in trading MTNs, when in fact, the Defendants knew that the funds would be used, and did use, the funds for purposes other than as represented to the Plaintiff;

  b. That the Defendants had made a lot of money trading MTNs; and

  c. That there was a trading account established at HSBC Hong Kong for Plaintiff in the amount of $25,000,000.

75. In connection with the offer and sale of securities to investors, Defendants, directly or indirectly failed to disclose material information, including, but not limited to, the following, which was necessary in order to make the representations made not misleading:

  a. That the investment contract issued as part of the Defendant's investment program were unregistered securities;

  b. That the investment contract issued as a part of the Defendants investment program were being issued/sold by the Defendants as unlicensed sales agents; and

c.  Some or all of the information typically provided in an offering circular or prospectus regarding the investment contracts were not available or disclosed, such as:

    i.  Risk factors for investors;

    ii.  Discussion of pertinent suitability factors;

    iii.  Any conflicts of interest the issuer, the principals, or the agent may have with regard to investments;

    iv.  Identities of all of the principals of the Defendants, along with a description of their experience;

    v.  Financial statements for the Defendants;

    vi.  The market for MTNs;

    vii.  The nature of the competition for MTN's or the nature of MTN trading markets;

    viii.  Current capitalization of the Defendants;

    ix.  The track record of the Defendants with MTNs, or of any other person or entity who has to receive invested funds;

    x.  Agent commissions or compensation for selling the investment;

    xi.  Whether the investment is a registered security or exempt from registration

    xii.  Whether the person selling the investment was licensed; and

    xiii.  Whether any of the principals of entities affiliated with or under common control with the issuer of the securities had filed a bankruptcy proceeding.

76. Defendants' representations and omissions in disclosure, were material because, had the Plaintiffs been fully informed of the truth of the representations and/or omissions, Plaintiffs would not have made the investments in the investment contracts.

77. Plaintiff's investments in the investment contracts were made at the urging of the Defendants and were made in the manner reasonably contemplated by the Defendant to induce Plaintiff to invest in the scheme.

78.  Plaintiff reasonably relied on Defendants' representations as being the truth and were at all times unaware of the falsity of Defendants' representations, and were unaware of the significance and materiality of the omissions regarding matters which should have been disclosed.

79. Defendants offered and sold securities through the use of telephone, email, regular mail, and other means and instrumentalities of interstate commerce.

80. Defendants, by engaging in the conduct set forth above, directly or indirectly, by the use of means or instruments of interstate commerce, or by the use of the mails, with scienter or reckless disregard for the truth of the representations made: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omitted  to state material facts necessary in order to make the statements made, in light of the circumstance under they which they were made, not misleading; or (c) engaged in acts, practices or courses or business which operated, or would operate, as a fraud or deceit upon the Plaintiff and other persons, in connection with the purchase or sale of securities.

81. By reason of the foregoing, Defendants have directly or indirectly violated Section 10(b) of the Exchange Act (15 U.S.C 78j(b)) and Rule 10b-5 (17 C.F. R. Section 240. 10b-5) and are

liable for damages in an amount to be proven at trial, but not less than $1,550,000, with interest from the date of investment by the Plaintiff.

82. The remaining Defendants had the ability to control, and through their primary owners and managers, had the knowledge and/or culpably participated to a significant degree in violations of the securities laws and are, therefore, jointly and severally liable for the violations in accordance with Section 15 of the Securities Act and/or Section 20A of the Exchange Act (15 U.S.C.A. Section 77o and 15 U.S.C.A. Section 78t (a)). In addition, the above named Defendants are secondarily liable to the Plaintiffs through the theories of respondeat superior, common law agency and alter-ego principles.

COUNT II
(Violation of Section 12(a)(1) of the Securites Act)

83.  Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

84. This Count is brought under Section 22(a)(1) of the Securities Act of 1933, as amended, 15 U.S.C. Section 77v (a)(1), to enforce a liability created by Section 12(a) of the Securities Act, 15 U.S.C. Section 771 (2) and 15 U.S.C. Section 77(o) respectively, arising out of the sale of unregistered securities.

85. Defendants directly offered and sold securities, or were material participants in such sales to the Plaintiff in Utah, in the form of investments in the investment contracts as previously described using one or more means of interstate commerce.

86. These investments constitute unregistered securities.

87. No registration statement for these securities was filed, or was in effect, in accordance with federal securities requirements, and the securities were sold in violation of Section 5(a)(c) of the Securities Act (15 U.S.C.A. Section 77e (a) and 77e(c)).

88. Defendants have, by engaging in the conduct set forth above, directly or indirectly, through use of means or instrumentalities of transportation or communication in interstate commerce or the mails, sold a security in violation of Section 5, and are strictly liable pursuant to Section (1)2 of the Securities Act (15 U.S.C.A. Section 77i (a)(1)) in an amount to be proven at trial, but not less than $1,550,000, with interest from the date of investment by the Plaintiffs.

89. The remaining Defendants had the ability to control, and through their primary owners and managers, had the knowledge and/or culpably participated to a significant degree in violations of the securities law and are therefore jointly and severally liable for the violations in accordance with Section 15 of the Securities Act and/or Section 20A of the Exchange Act (15 U.S.C.A. Section 77o and 15 U.S.C.A. Section 78t (a)). In addition, the above named Defendants are secondarily liable to the Plaintiffs through the theories of respondeat superior, common law agency and alter-ego principles.

90. Plaintiff is entitled, as a direct cause of action, to recover under this Count all of their investment losses as set out above in this Complaint under this cause of action against those directly engaged in the sale of securities or who were knowingly material participants. Plaintiff asserts each Defendant was either a seller or a material participant, and that each are therefore jointly and severally liable to Plaintiff under this Count.

## COUNT III
### (Violation of Section 12(a)(2) of the Securities Act)

91.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

92.     This Count is brought under Section 22(a)(2) Securities Act of 1933 as amended, 15 U.S.C. Section 77v(a)(2) to enforce the liability created by Section 12(a) of the Securities Act of 15 U.S.C. 77l(2) and 15 U.S.C. Section 71 respectively arising out of fraud or material omissions in the sale of a security.

93.     Defendants directly offered and sold securities or were material participants in such sales to the Plaintiff in Utah in the form of investments in the investment contracts as previously described using one or more means of interstate commerce.

94.     These securities constitute unregistered securities.

95.     In the sale of such securities by Defendants to Plaintiff, the Defendants made material misrepresentations or omitted to make statements of fact necessary for Plaintiff to make an informed investment decision, as such statements are more particularly defined and set out above, describing particular misstatements, misrepresentations or material omissions in the sale of the subject investment contract securities.

96.     Each of such misrepresentations or omissions to state material facts constitutes a separate securities law violation under Section 12(2) as set out in this Count. Each Defendant, as previously described, directly made such statements or omissions to state material facts as part of the sales of the securities to the Plaintiff, or were material participants with the selling party in completing such sale, and/or by association in the selling with the related entities as previously set out in the factual statements.

97.     As a direct and proximate result of such misrepresentations or omissions, the Defendants, and each of them jointly and severely, are liable to the Plaintiff for their loss of investments in the asserted amount of $1,500,000.00, or as otherwise proven at trial, together with interest as provided by law.

98.     In addition, the above-named Defendants, and each of them, are secondarily liable to Plaintiff under the theories of respondeat superior, common law agency and alter-ego principals.


COUNT IV
(Private Right of Action under Utah Securities Act, Section 61-2-22)

99.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

100.     Jurisdiction for this Count is conferred upon this Court under the applicable principle of pendent jurisdiction and each claim under this Count arises out of the same nexus of operative facts as previously alleged.

101.     Utah law creates a private express right of action for certain securities law violations as set out in Section 61-1-22 of the Utah Act.

102.     The investment contracts offered and sold by the Defendants are securities under Section 61-1-13 of the Utah Act.

103.     The securities were offered and sold in or from the State of Utah.

104.     No registration statement for these securities was filed, or was in effect, in accordance with federal securities requirements; the securities offered and sold by the Defendants were not registered under the Utah Act; and the Defendants did not file any claim of exemption relating to the investment opportunity.

105.     Defendants have, by engaging in the conduct set forth above, directly or indirectly sold an unregistered security in violation of Section 61-1-7 as incorporated by  Section 61-1-22(a)(1) of the Utah Act, and are liable to the Plaintiffs for actual damages in an amount to be proven at trial, plus interest, costs and reasonable attorneys fees.

106.     Each of the named Defendants had the ability to control, and through their primary owners and managers, had the knowledge and/or culpably participated to a significant degree in

violation of the securities law and are therefore jointly and severally liable for the violations in accordance with Section 61-1-22 of the Utah Act. In addition, the Defendants are secondarily liable through the theories of respondeat superior, common law agency and alter-ego principals.

107.     Based on the above information, the Defendants violated Section 61-1-7 of the Utah Act and liability arises under Section 61-1-22 of the Utah Act.

108.     In addition, as previously alleged and set out, the Defendants directly, or as material participants, engaged in the sale and distribution of unregistered securities to Plaintiff through misrepresentations or omissions to state material facts constituting a violation of Section 61-1-1(2) of the Utah Act as incorporated in the right of direct cause of action provided under Section 61-1-22 of the Utah Act.

109.     As a direct and proximate result of such misrepresentations or material omissions, the Defendants are each liable under Section 61-1-22 to the Plaintiff for its principal investment loss in the asserted amount of $1,500,000, or as otherwise proven at trial, together with interest.

110.     Under both claims for losses asserted in this Count, liability is further extended under Section 61-1-22 of the Utah Act, to each Defendant who directly or indirectly controls the seller liable under the Utah Act, and every partner, manager, officer or director of such seller.

111.     Further, under Section 61-1-22(2) of the Utah Act, each of the Defendants is liable to the Plaintiff, and Plaintiff is entitled to recover, separate from their actual losses as alleged herein, treble damages, court costs and all incurred attorney fees, upon a showing that such misrepresentations, omissions, or sales of unregistered securities were made intentionally or recklessly, as defined under the Utah Act. The Plaintiff, therefore, asks for such relief, as set out in this paragraph.

112.    Pursuant to the provisions of Section 61-1-22 of the Utah Act, the Plaintiff is further entitled to judgment for interest on all amounts awarded under this section at 12%.

113.    Plaintiff is entitled to recover such damages under Section 61-1-22, as previously set out, as to each Defendant, jointly and severely.

COUNT V
(Common Law Fraud)

114.    Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

115.    Jurisdiction for this Count is conferred upon this Court under the applicable principle of pendent jurisdiction and because all claims under this Count arise out of the same nexus of operative facts.

116.    Defendants have, by engaging in the representations, material omissions and conduct set forth above, made numerous and repeated material representations to Plaintiff concerning presently existing material facts, which were false, and the Defendants knew them to be false or knew that they were made recklessly, knowing that they had insufficient information upon which to base the representations, for the purpose of inducing the Plaintiff to act upon such information.

117.    The Plaintiff, acting reasonably and in ignorance of the falsity of the representations, did in fact rely upon the representations and were thereby induce to act to its injury and has been damaged thereby.

118.    As a direct and proximate result of such fraudulent statements, omissions or acts, the Plaintiff has suffered  actual damages of, at least, $1,500,000, or as otherwise proven at trial.

119.    To the extent Plaintiff proves intent on recklessness, they should be awarded punitive damages and attorney fees under this Count. Plaintiff prays for punitive damages, or as the Court shall otherwise determine.

## COUNT VI
### (Default and Breach of Contract Under the Investment Contract)

120.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

121.     Jurisdiction for this Count is conferred upon this Court under the applicable principle of pendent jurisdiction and because all claims arise out of the same nexus of operative facts.

122.     The Plaintiff has demanded payment under the investment contracts and no payment has been made to the Plaintiff and the Defendants are in breach of the agreement.

## COUNT IX
### (Civil Conspiracy)

123.     Plaintiff incorporated by this reference the preceding paragraphs of the Complaint.

124.     The Defendants knowingly joined and agreed to the terms of the conspiracies described in this Complaint.

125.     The Defendants created a scheme and artifice to defraud as represented by the investment contract, with the fraudulent objective of enticing investment in the sale of the unregistered securities by offering an above-average market rate of return on investment.

126.     The Defendants are not registered securities broker-dealers or licensed agents, and unlawfully offered the sale of unregistered securities with the objective of promoting the fraudulent scheme for their own personal financial benefit.

127.     The Defendants aided each other in this fraudulent scheme all for their own personal financial benefit.

128.     Defendants' actions in promoting the investments were coordinated, illegal and fraudulent.

65.     Each of the misrepresentations and omissions described herein, and the transactions which led to them, were overt acts undertaken in furtherance of these conspiracies.

66.     Plaintiff suffered injury and economic damage as a direct result of Defendants' actions in an amount to be determined at trial, but not less than $1,500,000.

67.     Plaintiff is entitled to punitive or exemplary damages and attorneys fees as determined by the Court, upon proof of this Count.

COUNT X
(Conversion)

68.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

69.     The Defendants diverted funds from the escrow account to themselves.

70.     The diversions include, but are not limited to, the diversion of $1,550,000.

71.     By reason of the forgoing, the Defendants with the intent to wrongfully appropriate and assume ownership of the diverted fund, have intentionally assumed and exercised the right of ownership over the diverted funds to the exclusion of the rights of the Plaintiff.

72.     Such taking and continued exercise of the right of ownership over the diverted funds was and is wrongful, intentional and malicious.

73.     Plaintiff hereby request that the Court declare that the Defendants have converted the diverted funds and award Plaintiffs herein damages in an amount equal to the diverted funds.

74.     The actions constituting conversion by the Defendants have been taken with an intent indicating malice, fraud, and/or wanton disregard for the rights of the Plaintiff. Therefore, Plaintiff is entitled to punitive damages.

## COUNT XI
### (Unjust Enrichment)

75.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

76.     The Defendants received, at a minimum, funds totaling $1,500,000, which sum properly belongs to the parties represented by Plaintiff herein.

77.     Acceptance and retention by the Defendants of the above-described funds is inequitable insofar as it deprives the Plaintiff herein of funds that rightfully belong to them.

78.     By reason of the facts alleged herein, to wit, the unjust enrichment of the Defendants, the parties represented by Plaintiff herein have sustained damages of at least $1,500,000.

79.     Plaintiffs are entitled to recovery in the amount proven at trial, plus interest.


## COUNT XII
### (Accounting)

80.     Plaintiff incorporates by this reference the preceding paragraphs of the Complaint.

81.     As specifically described herein, the Defendants have received at least $1,550,000 from the Plaintiff for their personal use.

82.     The Defendants received the above-referenced funds, despite the fact that no legitimate business purpose exists for receipt of those funds.

83.     Accordingly, Plaintiff is entitled to an accounting of the funds received by the Defendants and the return of any money paid to the Defendants.


## PRAYER

Wherefore, Plaintiff pray for judgment against the Defendant as follows:

A.      For all general damages associated with all causes of action asserted above in an amount to be proven at trial, but not less than $1,550,000, together with interest from the date of investment;

B.      For all compensatory damages associated with the causes of action asserted above in an amount to be proven at trial;

C.      For attorneys fees and costs as provided under Utah law;

D.      For treble damages as provided under the Utah Act;

E.      Alternatively, for punitive damages under the fraud, conspiracy and conversion claims, if treble damages are not awarded.

F.      Judgment on Plaintiff's conversion claim in an amount to be proven at trial;

G.      Judgment on Plaintiff's unjust enrichment/quantum meruit damages in an amount to be proven at trial;

H.      An accounting by the Defendants;

I.      For interest on all amounts awarded at the legal or statutory rate; and

J.       For such other relief as deemed appropriate by the trier of fact.


Dated this 14th day of June, 2010.


                                        /s/ Nathan D. Miller
                                        Nathan D. Miller
                                        Attorney for Plaintiff


Plaintiff's Address:

10120 Southeastern Ave.
Henderson, NV 89052